In re Dale D. JONES and Leah B. Jones, Debtors.

Dale D. JONES and Leah B. Jones, Appellants,

v.

UNITED STATES of America, Internal Revenue Service, Appellee.

BAP No. ID–96–1741–ROV.
Bankruptcy No. 95–01380.
Adv. No.95–6140.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Oral Argument Held by Telephonic Conference and Submitted March 19, 1997.

Decided April 30, 1997.

Brent T. Robinson, Ling, Nielsen & Robinson, Rupert, for Debtors.

Richard R. Ward, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for U.S.

Before: RUSSELL, OLLASON, and VOLINN, Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

Dale and Leah Jones appeal the summary judgment granted by the bankruptcy court confirming their tax liability in the amount of $411,318.98. We VACATE and REMAND for trial consistent with this opinion.

## I. FACTS

The plaintiffs/debtors Dale and Leah Jones ("debtors") appeal the summary judgment motion granted by the United States Bankruptcy Court for the District of Idaho in favor of the Internal Revenue Service ("IRS"). The original adversary proceeding was brought by the chapter 13 [1] debtors, seeking a determination from the bankruptcy court that they were no longer liable for certain taxes.

The following material facts are undisputed. On December 24, 1987, the debtors submitted a Form 656 "Offer in Compromise" to the IRS seeking to settle their federal tax liability for the years 1975 through 1979. The tax liability arose over several tax shelters the debtors claimed on their 1975 through 1979 tax returns that a federal tax court declared invalid. The tax court held the debtors liable for $139,466 on the tax returns in question. By 1987, however, this liability had grown to over $287,000 due to penalties and accrued interest.

The debtors offered to pay $139,466 to satisfy this $287,000 tax liability. Under the Compromise, the debtors paid the amount of the underlying tax in return for the IRS forgiving the accrued interest and penalties. In connection with the Offer in Compromise, the debtors submitted IRS Form 433 Statement of Financial Condition and Other Information. On Form 433, questions 24 and 25, the debtors denied having an interest (as beneficiary, trustee, life interest, etc.) in an estate or trust.

In June 1988, IRS revenue officer Betty Young set up a personal interview with Dale Jones ("Jones") to go over Form 433 item by item to verify its accuracy. The revenue officer discovered that the debtors were the trustees of the Darback Trust. The revenue officer also discovered several "suspicious" transfers of property (real and personal) which were all made by the debtors to BICO Corporation on the same day in 1979. The transfers included the debtors' personal residence, automobiles, and other properties. Dale Jones is the Secretary of BICO but claims no financial interest in the Corporation.

Inspector Young's report, however, stated that the debtors continued to use the properties, and paid rent on their residence to BICO. The report stated:

> The investigator believes these rents are below the fair market value of rents in the area. When asked about this, the taxpayer indicated he did work for the corporation in exchange for the reduced rent. The taxpayer states that he owns his automobile, although the Department of Motor Vehicles has the corporation, as mentioned above, as the registered owner. The investigator has been unable to show that the taxpayer has any financial interest in the corporation and so has been unable to refer the case to Criminal Investigation. The taxpayer conducts all his business by cash. Review of his bank statements and checks revealed nothing.

Despite these noted suspicions, the revenue officer recommended that the IRS accept the offer. The revenue officer concluded that the compromise offer exceeded the sum that could be collected under the usual collection procedures and, based on their present income and future prospects, appeared to be the maximum sum that the taxpayers could reasonably be expected to pay. On March 7, 1989, the IRS accepted the debtors' Offer in Compromise and the debtors paid the IRS $139,466.

In May of 1989, however, the IRS began an investigation of BICO Corporation. This investigation led to a grand jury indictment against Jones in the United States District Court for the District of Idaho on April 13, 1994 for violating 26 U.S.C. SS 7201 and 7206(1). The charges were as follows:

### Count One

On or about October 1, 1979, and continuing to about August 9, 1989, in the

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

District of Idaho, DALE D. JONES, a resident of Pocatello, Idaho, did willfully attempt to evade and defeat the payment of a large part of over $287,000.00 in income tax due and owing him to the United States of America for the calendar years 1975 through 1979 1) by concealing his ability to pay, 2) by making false statements to representatives of the IRS, and 3) by submitting false documents to the IRS.

### Count Two

On or about June 7, 1988 in the District of Idaho, DALE D. JONES, a resident of Pocatello, Idaho, did willfully make and subscribe a Statement of Financial Condition and Other Information (IRS Form 433), which was verified by a written declaration that it was made under penalties of perjury and which DALE D. JONES filed with the Internal Revenue Service, not then believing the Form 433 to be true and correct as to every material matter in that: 1) item 23 of the IRS Form 433 reported that defendant JONES had no life interest in any trust, whereas, as defendant JONES then well knew, he had a life interest in the Darback Trust, and 2) item 24 of the IRS Form 433 reported that defendant JONES was not the grantor or donor of any trust, nor the trustee or fiduciary for any trust, whereas, as defendant JONES then well knew, he was the donor, grantor, and trustee of the Darback Trust.

On July, 18, 1994, Jones pled guilty to Count 1. In exchange for the guilty plea, the government agreed to dismiss Count 2 and to not take a position during sentencing. The District Court placed Jones on two years probation, and fined him $2,500.

On November 28, 1994, the IRS revoked acceptance of the debtors' Offer in Compromise pursuant to 26 C.F.R. § 301.7122–1(c) (1)[2] on the grounds that the debtors had falsified documents and concealed assets in connection with the submission of the Offer. On April 3, 1995, the IRS reassessed the debtors' tax liability, which by that time consisted of the accrued interest and penalties on the previously paid tax.

On May 11, 1995, the debtors filed a petition for relief under chapter 13. On June 19; 1995, the IRS filed a proof of claim of $411,-318.98 for penalties and interest for tax years 1975 through 1979.

On August 11, 1995, the debtors filed an adversary proceeding seeking a determination by the bankruptcy court of the amount of their tax liability and a determination of what portion of that liability was a secured claim. The debtors moved for summary judgment, asking the bankruptcy court to determine that they were not liable for the taxes asserted by the IRS on the basis that it had improperly set aside the Offer in Compromise agreement.

On June 7, 1996, the bankruptcy court denied the debtors' motion for summary judgment and entered an order granting summary judgment in favor of the IRS. The bankruptcy court concluded that "making false statements to representatives of the IRS, and submitting false documents to the IRS, are the same thing as a 'falsification or concealment of assets' by Debtor." The

---

2. 26 C.F.R. § 301.7122–1(c) provides:

   Neither the taxpayer nor the Government shall, upon acceptance of an offer in compromise, be permitted to reopen the case except by reason of (1) falsification or concealment of assets by the taxpayer, or (2) mutual mistake of material fact sufficient to cause a contract to be reformed or set aside.

   Congress expressly granted the IRS authority to make Offers in Compromise under 26 U.S.C. § 7122(a), which provides:

   The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

   The IRS issued 26 C.F.R. § 301.7122–1(c) pursuant to the general regulatory authority granted of 26 U.S.C. § 7805(a), which provides:

   Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

bankruptcy court, therefore, held that the IRS was entitled to reopen and revoke the Offer in Compromise pursuant to 26 C.F.R. § 301.7122–1(c)(1). The court further concluded that the Offer in Compromise was properly set aside as to debtor Leah Jones as well. The debtors timely appeal.

## II. ISSUE

Whether the bankruptcy court erred in granting summary judgment in favor of the Internal Revenue Service.

## III. STANDARD OF REVIEW

■ Findings of fact by the bankruptcy court are not to be set aside unless found to be clearly erroneous. *In re Littleton,* 106 B.R. 632, 634 (9th Cir. BAP 1989), *aff'd,* 942 F.2d 551 (9th Cir.1991). Conclusions of law are reviewed independently and are subject to *de novo* review. *Id.*

Summary judgment is appropriate only if the evidence, viewed in the light most favorable to the non-moving party, shows that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c); *Hopkins v. Andaya,* 958 F.2d 881, 884 (9th Cir.1992), *cert. denied,* 513 U.S. 1148, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995).

■ The issue before the Court, whether summary judgment was proper, is a question of law and is reviewed *de novo. In re LCO Enterprises,* 12 F.3d 938, 941 (9th Cir.1993); *see also Matter of Lockard,* 884 F.2d 1171, 1174 (9th Cir.1989) (availability of collateral estoppel reviewed *de novo* ).

## IV. DISCUSSION

*Whether the Bankruptcy Court Erred in Granting Summary Judgment in Favor of the IRS*

1. *Whether Dale Jones, by pleading guilty to (1) concealing his ability to pay. (2) making false statements to representatives of the IRS, and (3) submitting false documents to the IRS, was collaterally estopped from litigating whether he falsified or concealed his assets*

Summary judgment should be granted if "the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c). The trial court stated:

> The issue is whether concealing his ability to pay, making false statements to representatives of the IRS, and submitting false documents to the IRS, are the same thing as a "falsification or concealment of assets" by Debtor. This court concludes that they are. Therefore, the IRS is entitled to reopen and revoke the Offer in Compromise pursuant to 26 C.F.R. section 301.7122–1(c)(1).

In granting summary judgment, the court collaterally estopped the debtors from litigating whether a guilty plea by Jones to concealing his ability to pay, submitting false statements to the IRS, and submitting false documents to the IRS were the same as "falsification or concealment of assets."

■ For collateral estoppel to apply, the issue sought to be precluded must be the same issue involved in the prior action. The issue must have been actually litigated in the prior action. It must have been determined by a valid and final judgment, and that determination must have been essential to the final judgment. *Matter of Ross,* 602 F.2d 604, 608 (3rd Cir.1979).

■ The IRS argues that the "Debtors cannot relitigate in the Bankruptcy Court whether Mr. Jones falsified documents and concealed his assets as those facts have been conclusively established by Mr. Jones' guilty plea." The IRS correctly asserts that a guilty plea "conclusively admits all factual allegations of the indictment." *McCarthy v. U.S.,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). The IRS contends that pleading guilty to willfully attempting to evade and defeat one's federal income tax "(1) by concealing one's ability to pay, (2) by making false statements to representatives of the Internal Revenue Service, and (3) by submitting false documents to the Internal

Revenue Service," is the same as falsifying or concealing assets.

Nowhere during the course of the criminal proceedings, however, did Jones admit to falsifying or concealing his *assets*.[3] The only thing conclusively established by Jones' guilty plea in the criminal trial was that Jones concealed his ability to pay, made false statements, and falsified *documents*, not assets.

Concealing one's ability to pay is not the same as concealing assets. Form 433 requires the taxpayer to list both the taxpayer's income and assets. The taxpayer's income and assets both constitute an "ability to pay." The debtors persuasively argue that "if a taxpayer has accurately reported his assets, but failed to accurately report his income, he has 'concealed' his ability to pay." Jones' guilty plea of "concealing his ability to pay" provides the court with no guidance as to whether Jones "concealed his assets." Jones could have either failed to accurately report his income, his assets, or both.[4] This

issue was neither litigated nor determined in the criminal trial. The requirements for the application of collateral estoppel were therefore not met.

■ Assuming, *arguendo*, that this issue was actually litigated and determined that Jones' guilty plea collaterally estopped him from litigating whether he "concealed his assets," a genuine issue of material fact exists as to whether the IRS relied on Jones' false statements in accepting the Offer in Compromise, as discussed below.

Because there was a genuine issue of material fact, the bankruptcy court erred in granting summary judgment. The IRS was not entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c); *Hopkins*, 958 F.2d at 884.

### 2. *Whether the IRS must prove reliance in order to revoke the Offer in Compromise*

■ An Offer in Compromise is a contract, and is governed by contract law. "It has

---

3. At the plea hearing the prosecutor, Mr. Bailey, gave a recital of the allegations and evidence against Mr. Jones. However, Mr. Jones did not plead guilty to falsification or concealment of assets. He pled guilty to Count 1.

THE COURT: Mr. Jones, insofar as it relates to Count 1 of the indictment, do you agree with prosecution's summary?
MR. RICHERT: [Jones attorney]: We disagree with the recitation and determination of the facts. We do believe there is a factual basis for the entry of the plea of guilty to Count 1. The Defendant did, in fact, as stated in Count 1 in the state of Idaho engage in fraud by concealing his ability to pay, by making false statements to representatives of the Internal Revenue Service and by submitting false documents to the Internal Revenue Service.
THE COURT: You admit that?
MR. RICHERT: The Defendant admits that, Your Honor.
THE COURT: You have a difference of interpretation of the facts, but you agree that there is sufficient evidence there to warrant a jury finding Mr. Jones guilty of the charge set forth in that indictment?
MR. RICHERT: That is correct, Your Honor.
THE COURT: Do you agree, Mr. Jones, with your counsel's statements?

DEFENDANT JONES: Yes.
THE COURT: Is it your desire to go forward at this point with a plea of guilty to Count 1?
DEFENDANT JONES: Yes.
THE COURT: The Court will ask you what your plea is to Count 1 of the indictment.
DEFENDANT JONES: Guilty.
MR. BAILEY: Your Honor, I'm sorry, maybe I misunderstood. Is the Defendant saying there is enough evidence to prove him guilty instead of saying he is guilty of the count?
MR. RICHERT: He is guilty of the offense, Your Honor.

.    .    .    .    .

MR. BAILEY: Thank you Your Honor, I apologize for taking that time. I just wanted to make sure. We understand that the Defendant is pleading guilty of the offense. He may have some disagreement about what the evidence and what the facts are, but they are facts, and he agrees that he is guilty of the offense, and that is our understanding.

4. Ability to pay may also encompass a range of possibilities for obtaining funds to pay a debt which are unrelated to existing assets. The debtor might have talents or abilities which could be income-producing, or borrowing power or access to loans or gifts because of personal connections. Lending institutions make loans frequently based on the debtor's expectations rather than existing collateral.

long been settled that an agreement compromising unpaid taxes is a contract and, consequently, that it is governed by the rules applicable to contracts generally." *U.S. v. Lane,* 303 F.2d 1, 4 (5th Cir.1962) (citing *Walker v. Alamo Foods Co.,* 16 F.2d 694 (5th Cir.1927), *cert. denied,* 274 U.S. 741, 47 S.Ct. 587, 71 L.Ed. 1320 (1927)).

The Ninth Circuit in *Timms v. U.S.,* 678 F.2d 831 (9th Cir.1982), *cert, denied,* 459 U.S. 1086, 103 S.Ct. 569, 74 L.Ed.2d 932 (1982) also applied contract principles to offers in compromise under 26 C.F.R. § 301.7122–1(c). Although the case is not directly on point,[5] the Ninth Circuit in *Timms* cited *Lane* with approval and stated that the decision in *Lane* stood "for no more than the proposition that an agreement is an agreement and that the taxpayer is bound by its terms. So too is the government." *Id.* at 834. The Ninth Circuit consistently applied principles of contract law to the case, stating, "[t]he 'rule of law' which is normally applicable to a § 7122 compromise is that such compromises are final and may not be reopened in the absence of fraud or mutual mistake." Rescission due to fraud or mutual mistake is a principle of contract law. *See* RESTATEMENT OF CONTRACTS §§ 152 and 162.

█  In order to revoke the Offer in Compromise, the IRS must show that it relied on Jones' fraudulent representations. The debtors argue, however, that the IRS did not rely on Jones' false statements and representations in determining whether to accept the Offer in Compromise. The debtors believe that the IRS, based on Inspector Young's report, knew that there were false statements, knew that the Darback Trust existed, and also knew that Jones may have an interest in BICO. The debtors argue that "[d]etrimental reliance can hardly be claimed by the government, because it had full knowledge of Jones' assets that were not specifically included in the Form 433, yet the government chose to accept the offer."

The IRS argues that the plain reading of 26 C.F.R. § 301.7122, 26 U.S.C. § 7122, and 26 U.S.C. § 7805 does not require reliance. Under 26 U.S.C. § 7122(a), Congress gave the IRS express authority to enter into offer in compromise agreements. Section 7122(a) provides:

> The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

The IRS argues that under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) the interpretation of the regulation is valid because it is "a permissible construction of the statute." *Id.* at 842–43, 104 S.Ct. at 2782. The Supreme Court in *Chevron* stated:

> If Congress had explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administer of an agency.

*Id.* at 843–44, 104 S.Ct. at 2782.

It is difficult for this Panel to conclude that Congress left a gap in contract law for the IRS to fill. Clearly, if Congress had intended to abrogate federal contract law as the IRS contends, it would have said so.

The IRS also contends that falsification of documents and making false statements to

---

5.  Timms concerned a taxpayer who brought suit for refund of amounts paid under an offer in compromise agreement.

the IRS is in itself fraud and, therefore, no reliance is needed. The IRS argues:

> Although fraud is not defined in these cases, it should be assumed that when the courts referred to fraud, they meant the concealment of assets or falsification specified in the regulation they were interpreting. In other words, it appears that the courts substituted the term "fraud" for the regulation's "falsification or concealment of assets" as a generalized shorthand. There is no indication in these cases that the courts intended by using the term "fraud" that the United States be required to show anything more than what is required by the regulation: that is, falsification or concealment of assets.

This argument is unpersuasive. Fraud has a long established definition. BLACK'S LAW DICTIONARY defines fraud as "An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right."

We agree with the debtors' argument that if reliance were not required, the IRS could simply accept an offer in compromise it knows to contain false statements and at some future point, if the debtors' assets were to increase in value, rescind the offer and collect again.

Finally, the IRS argues that if reliance is required, it is clear from Inspector Young's report that it relied on Jones' false statements in accepting the Offer in Compromise.

It is far from clear that the IRS relied on the statements that Jones pled guilty to making, although it may have relied on certain statements in the Offer in Compromise.

Had Jones pled guilty to Count 2, which specifically included falsifying items 23 and 24 on Form 433, the IRS' contentions of reliance would have a closer fit with Jones' guilty plea. By pleading guilty to Count 2, Jones would have confessed to falsifying that he had a life interest in Darback Trust, and that he was a grantor, donor, and trustee of Darback Trust.

The government, however, dismissed Count 2 when Jones pled guilty to Count 1. Count 1 is not as specific as Count 2. Count 1 only states that Jones willfully attempted to evade or defeat paying his taxes by concealing his ability to pay, by making false statements, and by submitting false documents to the IRS. Therefore, the IRS did not establish that in accepting the Offer in Compromise, it relied on the falsities that Jones pled guilty to in Count 1.

## V.  CONCLUSION

A guilty plea by the debtor to concealing his ability to pay, to making false statements, and to submitting false documents to the IRS was not the same as "falsifying or concealing assets." Because there was a genuine issue of material fact as to whether he falsified or concealed assets, it was error for the bankruptcy court to grant summary judgment for the IRS. The judgment is VACATED,[6] and REMANDED for trial.

---

**6.** The debtors have also appealed the denial of their summary judgment motion. Because it is clear that material questions of fact exist, as discussed above, the interlocutory order denying Jones' motion for summary judgment is AFFIRMED.